May it please the Court, my name is Sidney Lanier, appearing before the Appellant Chapter Trustee, John M. Wolfe, in this case, Your Honor. I believe that the case has been fully briefed, but I think that I'd like to make some comments on the development in the law since the trial court ruled in this case regarding the Homestead issue and the N. Ray Golden Rule. The case was first presented to the trial court. The N. Ray Golden Rule apparently was considered, at least by the appellate panel that the court relied on, to only cover proceeds from a homestead, rather than a case where the debtor had the property and claimed a homestead interest in that property on the day of the petition. Well, I believe that the court was incorrect in its ruling initially, even at the state of the law then, because the N. Ray Lane case really didn't go to the heart of the Golden case, which I believe the Lane case basically doesn't contradict the Golden case, and it does cite the Golden case, because I think that the issue that Golden really focuses on, and it took me some time to really understand that Golden was talking about the debtor's control of the property and the control of the proceeds. That was very key, and it shouldn't be held that if the debtor comes into possession and control of the proceeds of the homestead during the bankruptcy, that the Golden Rule should not apply. Now, you're swimming upstream in the sense that there's a split of the cases as to how that's going to work. Most of the cases go the same way the back went. I mean, the distinction is, Golden says, if you've got the proceeds, you have the proceeds and the homestead exemptions subject to the requirement that you reinvest within the period. Yes. The holding in this case is, if you have the property but not yet the proceeds, and you have the property at the date of filing, you're not subject to the six-month reinvestment requirement once you do sell it, if you sell it during the course of the bankruptcy before the finish, before it's wrapped up. I mean, that's the distinction. Most cases, it appears, agree with the BAP as to what happens if you own the property at the date of filing. Am I wrong on that? I don't think you're correct on that. When you say most cases, the cases that we've cited, the In Re Zavala case certainly doesn't hold that. And I think that's the only one. That's the only one, but on the other hand, I don't believe that the court cited a case that really deals with what we have here. And what we have here is, first of all, the reason the bankruptcy was filed was because of an execution sale. Which took place after the filing date. Which took place. It was in process. Mr. Lanier, why should there be a distinction between the status of having a piece of property and then having it sold, or having a property sold before the filing date and having the money? In either case, it's an asset subject to a condition subsequent. I agree with you totally. There should be no distinction. It's hard for me to understand the distinction. What is the distinction? What's the rationale made by the courts? By the bankruptcy courts, anyhow. I'm not sure. It's in the court of appeals, it's not that distinction. I believe that the rationale was a reliance on a very long-held doctrine, but not a universal doctrine, called the snapshot. The snapshot... The snapshot is as of the filing date. That's right. But the property always is a bundle of rights. Exactly. And one of those rights is defeated if you hold on to the money too long. Exactly. So if you come in with a piece of property that's a homestead, it's a homestead only because California law gives it that exempt status. And another provision of California law says it doesn't hold that in eternity. It can be sold, the property can be sold. If it's sold, $150,000 will be left for the homesteaders. You don't want to make a person homeless, but provided you reinvest it in another house. If you don't need to reinvest it in another house, what's the rationale for keeping that money away from creditors? There is no rationale under California law. And I believe that the Golden case, this court in the Golden case, rejected the snapshot version because I think it goes back to an older view of homestead, that the homestead was some sort of sacrosanct thing, and if it existed in property at the moment of bankruptcy, you couldn't touch the end. It is in some states. It is, but not in California. Not in California. In Florida, for example, it is. In Florida, I think it used to be. I'm not sure about Florida. I think Florida's changed a little bit in recent times. But here in California, and that's the case we're in front of, and the California law governs this case, that California doesn't, in fact there are cases, and I've been citing my brief, that the nature of the homestead in California is a personal right, not an interest in property. It's not a property right. It's a personal right in money. No hallowed status in a piece of property. There's no hallowed status in a piece of property, even if it's a home. That's right. The interest of California in its homestead is to make sure that the person has some relief from its debtors in order to achieve another homestead. And the California looks at this as an interest, and actually the homestead only comes into play when the property's sold, when it's liquidated. Because liens can be avoided if the homestead is impinged upon. This was not the case in the Jacobson's case. The house was worth well over $850,000. There was at least $500,000 above the equity. And the creditor got it. And the creditor got part of it. All but $150,000. Yes. However, when the Jacobsons received their $150,000, they didn't do what California law requires them to do. They did not reinvest it. And the bankruptcy stayed. Now if they had reinvested, would that have been a violation of bankruptcy? No. If they had reinvested it in another homestead, the exemption would have been preserved. The exemption expired during the bankruptcy and therefore reverted back to the trustee. Would you as trustee have had to approve that deployment of the $150,000? Well, I think, well, in this case, I don't think the trustee had any choice because the trustee didn't have custody of the money. That may have been a mistake that the trustee made at the time, not seeking an order from the bankruptcy court to limit what the debtor could do with the money. But that was the case. That's the case that was. But if we believe your argument, the trustee and the estate are benefited by the fact that the trustee didn't have any control over it because given the control exercised by Ms. Jacobson, she didn't reinvest it and therefore, in your argument, the estate gets it. So no harm to the trustee. Well, that's true. No harm for the trustee. And in fact, the issue didn't even arise until the expiration of the homestead period. In fact, the trustee had objected to the homestead on different grounds and amended its complaint, its objection, when it was informed that the time period of the homestead had expired, and that became part of the trial. When that property got sold, the property that came into bankruptcy, the trustee should have taken the money and held it and required the Jacobson to apply for leave to use that $150,000 to buy another residence. Well, no, the trustee couldn't take it because it didn't belong to the trustee at that point. It was exempt at that point. It was exempt from the time the debtors received that money to the expiration of the six months. They had total control over it. And I think control by the debtors is the heart of the golden rule. When the proceeds, when the debtors come into possession of the proceeds, they have the unfettered right to get a new homestead. But they're not allowed to use that money to go to Vegas or to buy a new car or to send their kids to college. They are required to reinvest it in a new property that they intend to live in. This did not happen, and there's no dispute about that fact. In a sense, the facts regarding the homestead, as far as the golden rule is concerned, are undisputed. So it expired. The trustee, the money automatically then became part of the bankruptcy estate. You think the bankruptcy appellate court was an era when it confined gold into a situation only where the money entered the bankruptcy rather than the property? I think that that is the error. That restricting golden, and the Lane case did that. They said that golden was restricted to only situations in which the debtor had proceeds at the date of possession. What's the standard of review? Is that de novo? The standard of review here, these are, number one, undisputed facts. Number two, it's an issue of law regarding this court's application of golden. Which is a Ninth Circuit precedent. Which is a Ninth Circuit precedent, 1986, I believe. However, the post-petition increase in the bankruptcy estate has had some case law development since this case was decided. The Supreme Court in Schwab v. O'Reilly and this court in Gebhardt talks about the, for instance, property appreciating after bankruptcy. Because that happened where property went way up after certain bankruptcies were filed and the estate gets the benefit of any change in the value of property. And in the N. Ray Marriott case that was cited in the brief, when the bankruptcy trustee objects to a homestead exemption, that homestead exemption is not frozen but it's subject to attack. And therefore it doesn't, it's not frozen in that sense. Not to attack. Well, for instance, it's, well, it's subject to the trial. And then the trial court decides whether or not the homestead, the bankruptcy court in this case, whether the homestead exists or not. Subject to attack based on subsequent events? It's based upon, it's based upon, I think the Marriott case said that there's, that if there's an objection, a timely objection to a homestead, the homestead exemption does not exist but is technically, it's only a technical matter. Because in the Gebhardt case, because all of the property, when the petition is filed, becomes property of the estate. And the exemption is only, only takes it out of the estate when it is affirmed. I understand that. Yes. And there may not be an answer that gets us very far. But you said the homestead exemption is subject to attack, which I entirely understand is right. Yes. But I'm trying to figure out if there's an analogy that's useful in this case, which is what you're hoping for, whether any of the attacks to which the homestead exemption is subject, and that you're referring to, are based upon real-world events that take place post-filing. Because here we're talking about a real-world event post-filing, and you're saying, well, we should take that into account. Well, I think this is the case where the homestead vanishes by action. Yes, but I'm asking if there are other cases where post-filing events are the basis for the attack on the homestead. Post-filing events. None comes to mind at this point. This is kind of unique in terms of a homestead exemption, which is kind of an exception to bankruptcy. Bankruptcy is a system of distribution as of the filing date in relationship to creditors. But here in the homestead, California law gives a certain insulation to the debtor, something that can't be taken from the debtor if the debtor complies with the law. And one aspect of compliance, I'm making an argument I should be asking a question. Is it a truth? Well, I agree with your argument, because I believe that the California homestead, and I believe we've said that our brief, is a personal right. The homestead is a personal right with a condition. Mr. Lynn, before you leave and you're out of time. I'm sorry. There are four questions that are before us. You've argued one. I'm sorry about that. I think that the brief is that the other questions have been fully briefed. You're not abandoning your argument. I am not abandoning any arguments. I believe that this case was wrongly decided from stem to stern, and that even, and the enterprise property. And midships as well. Yes. But we've still got a life raft with this court. From deck to keel. And we appreciate being heard. And I could address the other points, but I realize that I have limited time. We'll hear from the other side, and we'll give you a chance to respond. Thank you very much. Good morning, Your Honor. It's Jeffrey Vander Veen, representing Donald and Myrna Jacobson. It appears that counsel is focused on, and it seems to have been the major issue to distinguish between the Golden case and the Lane case. The question here is, do we apply the Golden rule? Your Honor, our response is that we feel the trial court and the BAP both correctly found that the Golden rule does not apply. And the difference being, in the Golden rule, the property was sold prior to the bankruptcy. In this case, as in the Lane case, the debtor owned the property at the time of filing, and the exemption attached as of the time of the filing. I've got two questions. First, a comment and then a question. I'm sure you're well aware of the rule of thumb. If the bankruptcy judge got it right, the appellant appeals to the district court. If the bankruptcy judge got it wrong, the appellant appeals to the BAP. I've seen that before. This is at least a close question, which the rule of thumb tells me. And then I look at the case. This is a close question. But my second point is the question. I understand the distinction. I can apply the distinction that the BAP did. That is to say, you've got the house, you've got the property, and that's it. You don't have money subject to contingency. You have the possibility of selling it to get the money subject to contingency, but you don't have the money subject to contingency. I mean, I can apply it. What's the sense of the rule? I mean, common sense. Why is that a good rule? Because in California, as in many states, a homestead is an important rule that goes to the debtor. It's where they live. It protects their homestead. If they've already sold the house prior to filing, then they don't have that homestead anymore. The reinvestment rules come in. If you have that house when you file, then your homestead is protected. It's not protected from the creditor. The creditor was able to force the sale. The creditor was able to bring a motion for relief and have the sheriff of Orange County conduct a sheriff sale. That's correct. It's not that the house is insulated. No, but the homestead amount is protected. It's not forever. It is if they, on the filing, if they own the property, then the homestead is protected. And the amount was $150,000 in this case. That's your argument. I mean, you're stating as a fact your argument. But I'm asking, and I think the panel is asking, okay, where's the common sense of that? I mean, the argument against you in terms of common sense is, well, if the $150,000 is important to them in the sense of having a place to live, they had six months to get a place to live, and they didn't. Well, keep in mind it's $150,000. The debtors are in bankruptcy. They're not going to be able to obtain a loan, or at least Myrna was in bankruptcy. They're not going to be able to obtain a loan, and it's difficult to buy a house for $150,000 in Southern California. So, I mean, in that aspect it would be very hard. And I think that the trial court in Nevada correctly applied Lane in this case because the exemption fixed, according to Hurtman, on the date of filing. When the property was sold, the sheriff sold the property, and the sheriff delivered the homestead proceeds to the Jacobsons, both Donald and Myrna. The bankruptcy trustee never sought to take possession of it. And all that came then was the other funds, which then went to the creditor who conducted the sale, and that money went to them, Mr. Cunningham. So, really, we believe that Lane is the proper case to apply here, that the exemption fixed on the date of filing. And I think all the other issues, as counsel has indicated. The exemption fixes, but it's a condition subsequent under California law. You're quite willing to take advantage of the California law that establishes the homestead, but there's a second aspect to California law that says you can only enjoy it for six months unless you deploy it into buying a second home. Golden indicated because the property has been sold before. Lane found that if you had the property and it was sold afterwards, then the homestead was fixed and you didn't have to reinvest. I believe the other issues are, if the court doesn't have any more questions, the other issues are clearly briefed. This is our second appeal. Unless the court has any more questions, then I'll let counsel respond. Okay, thank you. Very simply and quickly, Your Honor. Lane, I don't believe, can apply here, because the facts of Lane were quite different from the facts of this case. In Lane, it is true that the sale of the house took place after bankruptcy was filed, but with a big exception. Lane, in Lane, the debtor and the trustee made an agreement about the sale, and the agreement was that the trustee, okay, you can sell the property, but all the proceeds of the property go to the trustee, and the trustee will hold those monies until the court decides the trustee's challenge. Well, that is totally different from the situation here. You see, in Lane, when that case was decided, the debtors never had control over those proceeds. So California law could not apply. Therefore, Lane cannot control this case, because Lane, and therefore the In re Golden Rule didn't apply in Lane, because the debtors never received the proceeds. And, of course, Lane was an Oregon statute, but I'm not sure. It was not a very different statute. I was going to say, I think, in principle, those two statutes work the rest of the same. They are very similar. Not identical, but similar. What do you make of the practical argument, which I think is a real practical argument, $150,000 in the hands of someone who is in bankruptcy, trying to buy a new home in Southern California, good luck. Well. Good luck buying a new home. You're not going to get it. Well, the law doesn't go into the real estate market. But I'm trying to figure out the practical sense of this. Okay. Well, I think that, first of all, you cannot buy the home that you were living in, an $850,000 home. Can you buy any home? You can buy a condo, very clearly. You can buy a condo or an apartment for $150,000. Yes, you can. Very easily. And that's why the homestead, the California in its wisdom, has increased the homestead amount over the years. It didn't used to be $75,000 each or $150,000 for a couple. And the law is always behind the market. Of course, what we've seen in the market recently, it may be ahead of the market. Just like the interest rate. I remember the interest rate on a judgment used to be 7%. Then it went to 10%. And it didn't seem like that much when interest rates were at 13%. But it looks pretty good now on a judgment. So I believe. It paid off pretty quick most of the time. I think that a judgment is a good investment. So I believe that the Lane case. Yes, the Lane case does not apply here because the debtors never were in control of the proceeds in Lane. And that really, I think, answers the Lane question. Thank you. Thank you, both sides. A tricky case and nice arguments from both sides. Appreciate it. Jacobson, In re Jacobson, now submitted for decision. And we're adjourned for the day. Thank you. Thank you. All rise. This court is adjourned.
judges: Hellerstein, Farris, Fletcher